UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PF2 EIS LLC,

          Plaintiff,

v.

MHA LLC and NJMHMC LLA d/b/a
HUDSON REGIONAL HOSPITAL,

          Defendants.

Civil Action No. 21-03673 (JXN) (LDW)

**OPINION**

**NEALS**, District Judge

This matter comes before the Court on the motion by Defendants MHA LLC ("MHA") and NJMHMC LLC ("NJMHMC") (collectively, the "Defendants") to dismiss Plaintiff PF2 EIS LLC's ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). [ECF Nos. 5.] Plaintiff filed an opposition [ECF No. 11] and Defendants replied in further support [ECF No. 12]. Jurisdiction is proper under 28 U.S.C. § 1332 and venue is proper under 28 U.S.C. § 1391. The matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' motion to dismiss [ECF No. 5] is **DENIED**.

**I.    BACKGROUND**

Defendants are companies organized and headquartered in New Jersey that have owned and operated Hudson Regional Hospital, formerly known as Meadowlands Hospital Medical Center. Compl., ECF No. 1 ¶¶ 2-3, 11-12. Plaintiff is a company organized in Delaware and headquartered in North Carolina that has provided electronic medical record software to healthcare professionals. *Id.* ¶¶ 1, 10. In 2010, Plaintiff's predecessor-in-interest entered a

contract with MHA to provide software to Meadowlands Hospital Medical Center. *Id.* ¶¶ 15-19. In 2016, NJMHMC purchased the hospital, including outstanding contracts. *Id.* ¶¶ 12-14. In 2018, the facilities were renamed Hudson Regional Hospital. *Id.* ¶ 12.

According to Plaintiff, Defendants have failed to pay for software provided to the hospital facilities from 2014 through 2017. *Id.* ¶¶ 20, 25, 28-29. Specifically, Plaintiff alleges that MHA and NJMHMC owe approximately $1.14 million in connection with unpaid invoices. *Id.* ¶ 29. Therefore, Plaintiff seeks relief from Defendants for breach of contract, or in the alternative, unjust enrichment. *Id.* ¶¶ 30-48. MHA and NJMHMC, on the other hand, move to dismiss these claims. ECF No. 5. In response, Plaintiff has opposed the motion, and Defendants have replied. ECF Nos. 11-12. The matter is ripe for determination by the Court.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In considering a facial challenge in a Rule 12(b)(1) motion, the court must "consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citations omitted). Subject matter jurisdiction will be found if the amount in controversy is at least $75,000 and the opposing parties are citizens of different states. 28 U.S.C. § 1332(a)(1). For the purposes of subject matter jurisdiction, a corporation is a citizen of the states where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). However, the citizenship of a partnership or a limited liability company "is determined by the citizenship of its partners or members." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Ultimately, "no plaintiff can be a citizen of the same state as any of the defendants." *Midlantic Nat. Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995).

2

Relatedly, Federal Rule of Civil Procedure 12(b)(3) allows a party to move for dismissal due to improper venue. Fed. R. Civ. P. 12(b)(3). Venue is proper in the judicial district where the defendant resides or the judicial district where "a substantial part of the events or omissions" at issue occurred. 28 U.S.C. § 1391(b). For the purposes of venue, an entity defendant resides in the judicial district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2). If proper venue cannot otherwise be established, the action may be brought in any judicial district where personal jurisdiction can be exercised. § 1391(b).

Separately, under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the court assumes the truth of the facts alleged and draws all reasonable inferences in favor of the non-movant. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Ultimately, the allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the facts alleged must support a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plainly, the complaint "must do more than allege the plaintiff's entitlement to relief"—it "has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citations and brackets omitted). If a court considers documents extraneous to the pleadings, the matter is converted to a motion for summary judgment, though "a court may consider certain narrowly defined types of material without converting the motion to dismiss." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). For example, "a court may consider an undisputedly authentic

3

document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Relatedly, a court may consider "a document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations and emphasis omitted).

## III. DISCUSSION

Defendants move to dismiss the Complaint under Rules 12(b)(1), 12(b)(3), and 12(b)(6). ECF No. 7 at 7. First, Defendants argue that subject matter jurisdiction is not present because Plaintiff has not established diversity of citizenship. *Id.* at 33-34. Second, Defendants argue that there is no viable claim to relief because Plaintiff's action is barred by the entire controversy doctrine, a prior settlement agreement, and the affirmative defenses of the statute of limitations, laches, and unclean hands. *Id.* at 15-32. Third, Defendants argue that venue is improper because Plaintiff agreed to a forum-selection clause in a prior settlement agreement. *Id.* at 34-35.

As an initial matter, the Court notes that Defendants rely upon six documents outside of the Complaint. *See* ECF Nos. 5-3, 5-4, 7-1, 7-2, 7-3, 7-4. Plaintiff concedes that two of the documents (ECF Nos. 5-3, 5-4) are matters of public record. ECF No. 11 at 10. However, the remaining four documents (ECF Nos. 7-1, 7-2, 7-3, 7-4) are extraneous to the pleadings, and Plaintiff nowhere basis its claims or explicitly relies upon these exhibits, which are not integral to the Complaint. *See Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 672–73 (D.N.J. 2015) (converting motion to dismiss into motion for summary judgment where defendant relied upon prior settlement agreement to argue that plaintiff's action was barred); *see also McDevitt v. Borough of Clementon*, 2020 WL 468405, at *5 (D.N.J. Jan. 28, 2020); *Stovall v. Grazioli*, 2020 WL 1934018, at *6 (D.N.J. Apr. 22, 2020); *Scalercio-isenberg v. Select Portfolio Servicing, Inc.*, 2020 WL 5810527, at *2 (D.N.J. Sept. 30, 2020). Nevertheless, the Court finds that subject

4

matter jurisdiction is present, that there is a viable claim to relief, and that venue is proper, even if these documents are considered.

A.   **Whether Subject Matter Jurisdiction is Present**

Defendants argue that Plaintiff has not established diversity of citizenship. Specifically, Defendants argue that subject matter jurisdiction is lacking because Plaintiff fails to allege the residence of its parent company, Allscripts Healthcare LLC. ECF No. 7 at 34. Further, Defendants argue that Plaintiff "fails to allege the citizenship of the members of each LLC up its corporate ladder to Allscripts Healthcare Solutions, Inc." ECF No. 12 at 18.

However, the Complaint states that Allscripts Healthcare LLC is a subsidiary of Allscripts Healthcare Solutions, Inc., which is incorporated in Delaware and has its principal place of business in Illinois. Compl., ECF No. 1 ¶ 1. Additionally, the disclosure statement submitted alongside the Complaint clarifies that Plaintiff's sole member is Allscripts Healthcare LLC, and the corporate ladder between Allscripts Healthcare LLC and Allscripts Healthcare Solutions, Inc., is comprised solely of partnerships and limited liability companies. ECF No. 4 at 1.[1] Since the citizenship of a partnership or a limited liability company is that of its partners or members, the citizenship of Allscripts Healthcare Solutions Inc., controls. And as a corporation, Allscripts Healthcare Solutions, Inc., is a citizen in its place of incorporation and its principal place of business. Because Delaware and Illinois are where Plaintiff is organized and

---

[1] Even if the Court cannot consider the disclosure statement submitted alongside the Complaint, the Court can take judicial notice of the predicates for diversity of citizenship. *See, e.g., Norkunas v. S. Pennsylvania Transp. Auth.*, 2019 WL 6337913, at *3 (D.N.J. Nov. 27, 2019); *Amansec v. Midland Credit Mgmt., Inc.*, 2017 WL 579936, at *3 n.38 (D.N.J. Jan. 20, 2017); *Forero v. APM Terminals*, 2019 WL 6168031, at *3 (D.N.J. Nov. 19, 2019). In any event, the Complaint includes sufficient detail for the Court to find subject matter jurisdiction.

headquartered, the opposing parties are citizens of different states. Accordingly, diversity of citizenship has been established and subject matter jurisdiction is present.[2]

### B. Whether There is a Viable Claim to Relief

Defendants maintain that "this dispute was completely resolved" by MHA and Plaintiff's predecessor-in-interest. ECF No. 12 at 6. According to Defendants, MHA previously sued Plaintiff's predecessor-in-interest for breach of the contract at issue, Plaintiff actively participated in settlement and ancillary cooperation agreements to resolve the action, MHA informed Plaintiff it could no longer collect payments on invoices, and Plaintiff then waited a year and a half to sue Defendants for unpaid invoices from years beforehand. ECF No. 7 at 7-9. Based on these circumstances, Defendants argue that there is no viable claim to relief.

#### i. Whether Plaintiff's Action is Barred by the Entire Controversy Doctrine

Defendants argue that Plaintiff's action is barred by the entire controversy doctrine. Indeed, Defendants argue that the previous action involved the contract that Plaintiff "now seeks to enforce against MHA," that "every single billing date" attached to the Complaint occurred before the previous action, and that Plaintiff "was free to intervene" in the previous action but failed to do so. ECF No. 7 at 17-18.

However, the entire controversy doctrine is a "claim preclusion device" under New Jersey law. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999); *see also Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) ("The Entire Controversy Doctrine is essentially New Jersey's specific, and idiosyncratic, application of

---

[2] Additionally, the amount in controversy is at least $75,000, as Plaintiff alleges that Defendants owe approximately $1.14 million in connection with unpaid invoices.

traditional res judicata principles."). Therefore, "the judgment in the prior action must be valid, final, and on the merits" in order for the entire controversy doctrine to apply. *Watkins v. Resorts Int'l Hotel & Casino*, 591 A.2d 592, 598-99 (N.J. 1991). Here, the prior action culminated in a settlement agreement, rather than a valid, final judgment on the merits.[3] Moreover, New Jersey Rule of Court 4:5-1(b)(2) places the obligation upon "each party" to disclose non-parties for joinder, and it states that a successive action should not be dismissed unless "the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action." N.J. Ct. R. 4:5-1(b)(2).[4] Here, Plaintiff was not a party to the prior action and is not defending the present action.[5] Accordingly, the entire controversy doctrine does not apply.[6]

### ii. Whether Plaintiff's Action is Barred by the Prior Settlement Agreement

Defendants argue that Plaintiff's action is barred by the prior settlement agreement. Specifically, Defendants argue that the settlement agreement in the previous action represented a comprehensive resolution between MHA and Plaintiff's predecessor-in-interest that included "all successors and assigns." ECF No. 7 at 22; ECF No. 12 at 7. Further, Defendants argue that the ancillary cooperation agreement stipulated that the settlement agreement would provide Plaintiff,

---

[3] Even if a judicially approved settlement agreement constitutes a final judgment on the merits, *see Conceicao v. Nat'l Water Main Cleaning Co.*, 650 Fed. Appx. 134, 135 (3d Cir. 2016), there is no indication that the settlement agreement between MHA and Plaintiff's predecessor-in-interest was judicially approved. To the contrary, the settlement agreement required stipulation of dismissal pursuant to New Jersey Rule of Court 4:37-1(a), which states that "an action may be dismissed by the plaintiff without court order" upon stipulation. N.J. Ct. R. 4:37-1(a); *see also* ECF No. 7-2 at 2.

[4] Rule 4:5–1(b)(2) "was adopted to implement the entire controversy doctrine" under New Jersey law. *Fornarotto v. Am. Waterworks Co., Inc.*, 144 F.3d 276, 283 (3d Cir. 1998)

[5] Defendants argue that Plaintiff was in privity with both parties to the prior action. ECF No. 12 at 12. Even if privity for purposes of the entire controversy doctrine is broader than privity for purposes of claim preclusion, *see Opdycke v. Stout*, 233 Fed. Appx. 125, 129 n.6 (3d Cir. 2007), the absence of a valid, final judgment on the merits renders the entire controversy doctrine inapplicable.

[6] Additionally, the billing dates attached to the Complaint do not indicate when the alleged breach of contract or unjust enrichment occurred in connection with the unpaid invoices, so it is unclear that all of Plaintiff's claims could have been brought in the prior action. *See* ECF No. 1-1.

7

its parent companies, and "all successor[s] and assigns" with a liability release. ECF No. 7 at 22; ECF No. 12 at 7.

However, Plaintiff was not a party to the settlement agreement in the previous action. *See* ECF No. 7-2 at 1, 5-6.[7] Moreover, it appears from the exhibits that Plaintiff's predecessor-in-interest transferred its contractual obligations before the previous action was filed. *Compare* ECF No. 5-3 at 12, *with* ECF No. 7-2 at 1. Therefore, the settlement agreement could not have covered Plaintiff, notwithstanding the inclusion of successors and assigns. *See* ECF No. 7-2 at 3.[8] Although the settlement agreement directly references Plaintiff, its parent companies, and their successors and assigns, the provision characterizes these entities as "released parties" under "*MHA's* foregoing release" of Plaintiff's predecessor-in-interest. ECF No. 7-2 at 3 (emphasis added). Similarly, the ancillary coordination agreement indicates that "*MHA* shall" provide "a release" to Plaintiff, its parent companies, and their successors and assigns. ECF No. 7-1 at 2 (emphasis added).[9] Based on these provisions, it is unclear that the settlement agreement prevents Plaintiff from bringing an action against MHA, even if it releases Plaintiff from liability

---

[7] Defendants argue that the settlement agreement binds Plaintiff "as a third-party beneficiary." *Id.* at 10 n.5. However, third-party beneficiary status cannot be extended without a "fact-sensitive" inquiry that is inappropriate at this stage of the litigation. *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 911 (N.J. 1982); *see also Ross v. Lowitz*, 120 A.3d 178, 191 (N.J. 2015) ("[A] third party is deemed to be a beneficiary of a contract only if the contracting parties so intended when they entered into their agreement."). Even if a fact-sensitive inquiry can be avoided because the settlement agreement directly references Plaintiff, "a third party beneficiary will *only* be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 197 (3d Cir. 2001); *see also Gomez v. PDS Tech, Inc.*, 2018 WL 1871461, at *4 (D.N.J. Apr. 19, 2018).

[8] Defendants argue that if Plaintiff's predecessor-in-interest transferred its contractual obligations before the previous action was filed, then Plaintiff should have "come forward" rather than proceed in "bad faith" as if covered by the settlement agreement. ECF No. 12 at 8-9. Defendants also argue that Plaintiff cannot disclaim being a party to the settlement agreement because "it directly participated" in the transaction. ECF No. 12 at 7. However, these arguments are better addressed as affirmative defenses. *See infra* III.B.iii.

[9] In any event, the ancillary cooperation agreement does not release parties on its own terms, but merely renders itself contingent on a settlement agreement that will release parties. ECF No. 7-1 at 2. For this reason, it is insignificant that Plaintiff's parent company is a party to the ancillary cooperation agreement or that there is an inclusion of successors and assigns. *See id.* at 1, 3, 6.

in an action brought by MHA. Accordingly, the prior settlement agreement cannot be enforced to bar Plaintiff's Complaint.[10]

### iii. Whether Plaintiff's Action is Barred by Affirmative Defenses

Defendants argue that Plaintiff's action is barred by the affirmative defenses of the statute of limitations, laches, and unclean hands. With respect to the statute of limitations, Defendants argue that the discharge or billing dates attached to the Complaint suggest that many claims arose more than six years before the present action was filed. ECF No. 7 at 25; ECF No. 12 at 14-15. Defendants argue that the remaining claims are subject to laches because Plaintiff offered no justification or explanation for a delay that was "highly prejudicial" due to witness memory loss, key personnel departures, the sale of the hospital facilities, and the wind-down of MHA. ECF No. 7 at 26-27; ECF No. 12 at 15 n.7. Defendants also argue that Plaintiff has unclean hands because it failed to intervene in the previous action, induced the settlement agreement through the ancillary cooperation agreement, took an active role in the negotiations, corresponded with MHA's counsel about the purported unpaid invoices, learned from MHA's counsel that its claims were barred, and nevertheless proceeded with the present action after sitting on its claims for nearly two years. ECF No. 7 at 29-31; ECF No. 12 at 17 n.8.

However, with limited exceptions, "an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004). For instance, unless the statute of limitations is "apparent on the face of the

---

[10] Defendants argue that "the circumstances surrounding the negotiation of this integrated transaction" and "[t]he preamble of the settlement agreement" point to a comprehensive resolution. ECF No. 12 at 10-11. However, "the court must enforce [the] terms as written," *C.L. v. Div. of Med. Assistance & Health Servs.*, 284 A.3d 860, 865 (N.J. Super. Ct. App. Div. 2022) (citations omitted), and the relevant terms of the settlement agreement do not seem to cover Plaintiff or to prevent Plaintiff from bringing an action against MHA.

9

complaint," the corresponding affirmative defense cannot serve as grounds for a Rule 12(b)(6) dismissal. *Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) (citations omitted). The same is true for other affirmative defenses. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (citations omitted) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face."); *see also Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

Here, the statute of limitations imposes a six-year period to file claims for breach of contract and unjust enrichment. N.J.S.A. § 2A:14-1 (breach of contract); *Kopin v. Orange Prods., Inc.*, 688 A.2d 130, 140 (N.J. Super. App. Div. 1997) (unjust enrichment). Yet the billing dates attached to the Complaint do not indicate when the alleged breach of contract or unjust enrichment occurred in connection with the unpaid invoices, so it is unclear when the six-year limitations period began to run under the statute. *See* ECF No. 1-1. Moreover, there are two other sets of dates attached to the Complaint, the significance of which are also unclear. *See id.* Thus, even if the spreadsheet attached to the Complaint imparts when Defendants received invoices, the statute of limitations for nonpayment of the invoices is not apparent on the face of the Complaint.

For similar reasons, the suitability of laches is not apparent on the face of the Complaint. Laches involves "delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party." *Nw. Covenant Med. Ctr. v. Fishman*, 770 A.2d 233, 244 (N.J. 2001) (citations omitted). But without clarity regarding the time of the alleged breach of contract or unjust enrichment, the length of delay is not ascertainable from either set of dates attached to the Complaint. Ultimately, "[t]here is little to be gained from line-editing this spreadsheet when a bit of discovery will permit the court to make a more sure-footed determination." *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349,

10

364 (D.N.J. 2021) (denying motion to dismiss based on statute of limitations and laches where similar data was attached to complaint).[11]

Likewise, the existence of unclean hands is not apparent on the face of the Complaint. Unclean hands "is discretionary on the part of the court" and "gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." *Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer*, 777 A.2d 19, 32 (N.J. 2001) (citations omitted). Since the discretionary and equitable determination of whether Plaintiff is a wrongdoer with respect to the subject matter in suit is likely to "depend on extrinsic facts," the Court must "tread warily" before proceeding. *Gaetano v. Gilead Scis., Inc.*, 529 F. Supp. 3d 333, 348 (D.N.J. 2021). While relevant facts are included in the Complaint or otherwise not in dispute, the Court finds that Plaintiff has not "effectively pled itself out of court." *Id.*[12] Accordingly, the affirmative defenses of the statute of limitations, laches, and unclean hands do not apply.

### C. <u>Whether Venue is Proper</u>

As a final matter, Defendants argue that Plaintiff agreed to a forum-selection clause in the prior settlement agreement. ECF No. 7 at 34-35; ECF No. 12 at 19. However, Plaintiff was not a party to, and is not bound by, the settlement agreement. *See supra* III.B.ii. Since Defendants are incorporated and headquartered in New Jersey, general personal jurisdiction can be exercised in the forum, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011), and venue is proper based on Defendants' New Jersey residence.

---

[11] Additionally, the justification, reasonableness, and prejudice of the delay are not ascertainable. Although the Complaint includes facts that are relevant to these inquiries, the laches determination also "requires consideration of facts not typically found in a complaint." *MHA*, 539 F. Supp. 3d at 364.

[12] For example, even if Plaintiff's parent company was involved in the negotiation or execution of the settlement or ancillary cooperation agreements, the extent of Plaintiff's awareness of the previous action remains unclear. Nor was MHA unaware of Plaintiff's potential involvement in the previous action, as Plaintiff's predecessor-in-interest notified MHA that Plaintiff should be joined. ECF No. 5-4 at 27; *see also id.* ¶ 4.

11

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss [ECF No. 5] is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: June 27, 2023

JULIEN XAVIER NEALS
United States District Judge