**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PF2 EIS LLC,<br><br>*Plaintiff/Counterclaim Defendant*,<br><br>v.<br><br>MHA LLC AND NJMHMC LLC D/B/A HUDSON REGIONAL HOSPITAL,<br><br>*Defendants*.<br><br>―――<br><br>MHA LLC F/K/A MEADOWLANDS HOSPITAL MEDICAL CENTER,<br><br>*Third-Party Plaintiff/Counterclaimant,*<br><br>v.<br><br>ALLSCRIPTS HEALTHCARE, LLC, CHANGE HEALTHCARE TECHNOLOGIES, LLC F/K/A MCKESSON TECHNOLOGIES, INC., ABC CORPORATIONS 1-100 AND JOHN DOES 1-100.,<br><br>*Third-Party Defendants.* | Civil Action No. 21-03673<br><br>**OPINION**<br><br>September 19, 2024 |

**SEMPER**, District Judge.

This case concerns contractual disputes related to healthcare technology software, hardware, and services. Defendant and Third-Party Plaintiff MHA LLC f/k/a Meadowlands Hospital Medical Center ("MHA") previously moved to dismiss Plaintiff and Counterclaim Defendant PF2 EIS LLC's ("PF2") Complaint, asserting that PF2's claims were barred by the settlement of prior litigation between MHA and third-party defendant Change Healthcare

Technologies, LLC ("Change") and by the entire controversy doctrine. (ECF 5.) MHA's motion to dismiss was denied June 27, 2023. (ECF 16, "June Opinion.") In its Opinion, the Court concluded that PF2's claims were not barred by the prior settlement agreement between MHA and Change. (*Id*. at 8.)

Presently before the Court are two motions to dismiss MHA's Third-Party Complaint and one motion to dismiss MHA's Counterclaims. (*See* ECF 56; ECF 57; ECF 58.) The Court reviewed all the submissions in support and in opposition and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, the motions to dismiss are **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. PF2's Complaint

PF2 initiated this lawsuit against MHA seeking recovery of money allegedly owed on unpaid invoices pursuant to a software contract that Change's predecessor assigned and transferred to PF2 over five years ago. (*See* ECF 1, "Compl.") In the Complaint, PF2 alleges that on or about April 15, 2010, Plaintiff's predecessor in interest, McKesson Technologies, Inc. ("McKesson") entered into a Master Agreement with defendant MHA. (ECF 1, Compl. ¶ 15.) Pursuant to the terms of the Master Agreement, Plaintiff agreed to sell and supply, and MHA agreed to purchase and use, certain computer hardware, software licenses, and annual maintenance and support services for electronic medical record ("EMR") and electronic health record ("EHR") software. (*Id*. ¶ 16.) As per the Complaint, PF2 performed under the contract and provided the obligated hardware, software, and support services for the benefit of Meadowlands Hospital Medical Center d/b/a Hudson Regional Hospital (the "Hospital"). (*Id*. ¶ 23.) However, Defendants defaulted on

2

their payment obligations, and on February 28, 2021, Plaintiff brought this action to recover damages in the amount of $1,143,721.32. (*Id*. ¶ 37.)

### B. MHA's Motion to Dismiss PF2's Complaint

Defendants moved to dismiss the Complaint, asserting that PF2's claims were barred by the settlement of prior litigation between defendant MHA and third-party defendant Change and by the entire controversy doctrine.[1] (ECF 5.) In support of its motion to dismiss, MHA submitted several exhibits, including the Settlement Agreement which is at issue in MHA's current claims against PF2. (ECF 7-1 through 7-4.) Defendant's motion to dismiss was denied in an Opinion dated June 27, 2023. (ECF 16, June Opinion.) Therein, the Court concluded that PF2's claims were not barred by the settlement of prior litigation ("2017 Litigation") between MHA and third-party defendant, Change. (*Id*. at 8.)

### C. MHA's Answer, Third Party Complaint, and Counterclaims[2]

On July 28, 2023, MHA filed an Answer to PF2's Complaint including a Third-Party Complaint, Affirmative Defenses, and Counterclaims. (*See* ECF 23, "CC/TPC.") Therein, MHA asserts that on November 14, 2017, MHA filed the 2017 Litigation. (ECF 23, CC/TPC ¶ 5.) The basis of the 2017 Litigation was defective billing and revenue cycle management software produced, marketed, and sold by Change. (*Id*. ¶ 6.) All contract claims asserted in the 2017 Litigation involved the same contract which is the subject of the present litigation. (*Id*. ¶ 9.) MHA

---

[1] On February 28, 2017, Change contributed certain assets relevant to its software business to PF2, including the contractual rights at issue in PF2's Complaint. (ECF 5-4, Ex. B at 27; ECF 7.) In August 2017, Third-Party Defendant Veradigm, LLC, f/k/a Allscripts Healthcare, LLC ("Allscripts") purchased PF2 and the contractual obligations at issue. (*Id*.; *see also* ECF 16, June Opinion at 8.)

[2] The facts are taken from MHA's Answer, Affirmative Defenses, Counterclaim and Third-Party Complaint, (ECF 23), which "the Court accepts . . . as true and draws all inferences in the light most favorable to the non-moving party." *Duke Univ. v. Akorn, Inc.*, No. 18-14035, 2019 WL 4410284, at *1 (D.N.J. Sept. 16, 2019) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008)). The Counterclaim and Third-Party Complaint portions of this pleading, ECF 23 at 10-19, will be referred to as "CC/TPC." The portion of this pleading that serves as the Answer and raises affirmative defenses, ECF 23 at 1-10, will be referred to as "AA."

broadly alleges that Change "claimed but never established" in the 2017 litigation that PF2 was duly assigned specific contracts at issue between MHA and Allscripts. (*Id*. ¶ 11.) Further, MHA contends that it was never provided notice by Change or Allscripts that the specific contracts at issue between MHA and Allscripts had been assigned. (*Id*. ¶ 12.) As a result, before MHA would agree to settle the claims in the 2017 litigation, a Confidential Cooperation Agreement (the "Cooperation Agreement") was negotiated and entered between MHA and Allscripts. (*Id*. ¶ 13.) In June of 2019, the 2017 Litigation was settled. (*Id*. ¶¶ 13-14.) That settlement was memorialized in two agreements: the Cooperation Agreement by and between Allscripts and MHA (ECF 7-1) and a Confidential Settlement Agreement with Mutual Releases (the "Settlement Agreement") by and between MHA and Change. (ECF 7-2; ECF 23, CC/TPC ¶¶ 13-14.) Both agreements state that Change no longer owned the assets relevant to the software business and had transferred them on a date prior to the filing of the 2017 Litigation. (*See* ECF 7-2, Settlement Agreement at 1; ECF 7-1, Cooperation Agreement at 1.)

MHA asserts five claims against Allscripts, PF2, and Change: (a) indemnification; (b) breach of contract; (c) breach of implied covenant of good faith and fair dealing; (d) unlawful interference with contract and prospective economic advantage; and (e) fraudulent inducement.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at

678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012); *see County of Hudson v. Janiszewski*, 351 F. App'x 662, 667-68 (3d Cir. 2009) ("Though we 'must accept all factual allegations in [the] complaint[, or in this case, the counterclaim,] as true, [] we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." (alterations in original) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007))). Under this standard, the counterclaim must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a counterclaim, the court must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court will, however, accept the counterclaim's well-pleaded facts as true. *Fowler*, 578 F.3d at 210.

On a Rule 12(b)(6) motion to dismiss, a district court may not consider information extraneous to the relevant pleading. *See* Fed. R. Civ. P. 12(d). Similarly, a motion to dismiss a counterclaim must be decided "on the face of the counterclaim." *Lukoil N. Am. LLC v. Turnersville*

*Petroleum Inc.*, No. 14-3810, 2015 WL 5455648, at *1 (D.N.J. Sept. 16, 2015). However, in certain circumstances, a court may also consider undisputed and authentic exhibits as well as matters of public record. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

### III. ANALYSIS

#### A. Impermissible Group Pleading – Counts II, III, & IV

MHA's ten page Third-Party Complaint and Counterclaim (the "Pleading") asserts five causes of action against three separate parties. (*See generally* ECF 23, CC/TPC.) As it relates to Counts II, III, and IV, the non-movants contend in part that MHA's pleading is impermissible as it fails to put the various defendants on notice of the allegations against them for certain causes of action. (ECF 58-1, TPD Change Br. at 6-7.) The Court agrees.

Specifically, as to Count II, while the Pleading alleges only Change breached the terms of the Settlement Agreement, the claim does not articulate the party against which it is made and generally seeks damages.[3] (ECF 57-1, Counterclaim Def. Br. at 7.) As it pertains to Count III, the non-movants contend that MHA "lump[s] together PF2, Allscripts, and Change . . . alleging that their 'conduct was and is unreasonable by any standard undertaken in bad faith in violation of the covenant of good faith and fair dealing implied in the Settlement Agreement and Cooperation Agreement, and has no legitimate business purpose.'" (ECF 23, CC/TPC ¶ 35; ECF 58-1, TPD Change Br. at 7.) Furthermore, the non-movants state that MHA broadly alleges purported misconduct by Change, PF2, and Allscripts but fails to identify the party against whom MHA asserts Count Four. (*Id*. ¶¶ 44-48.) Indeed, throughout the Pleading, specifically with respect to Counts II, III and IV, MHA fails to plead sufficient facts demonstrating the various parties'

---

[3] Of note, there is not a single allegation specific to Allscripts in Count Two. (*See* ECF 23, CC/TPC ¶¶ 28–32.)

6

respective individual involvement in the purported wrongdoing and fails to "specify[] which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Hynson By and Through Hynson v. City of Chester Leg. Dept.*, 864 F.2d 1026, n. 13 (3d Cir. 1988).

Here, MHA falls short of the requirement that mandates the pleading of specific facts as to the separate Third-Party and Counterclaim defendants' involvement in the alleged wrongdoing(s).[4] While MHA asserts a quasi-detailed factual recitation of the circumstances both before and after the 2017 Litigation; Plaintiff fails to adequately tether these factual allegations to the individual Third-Party and Counterclaim Defendants as it relates to the Second, Third, and Fourth causes of action in the Pleading. As plead, MHA fails to specify the offenses of PF2, Change, and Allscripts, and instead, groups Defendants together as a unit of wrongdoers and makes general allegations against the group.

Accordingly, the pleading deprives the Defendants of Rule 8's requisite notice of the claims against each Defendant. "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Hous. Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (citing *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005)). "Courts in this district have dismissed complaints when the [complaints] contain improper 'group pleading.' This type of pleading fails to satisfy Rule 8 'because it does not place Defendants on notice of the claims against each of them.'" *Baldeo v. City of Paterson*, No. 18-5359, 2019 WL 277600, at *4 (D.N.J. Jan. 18,

---

[4] *See, e.g.*, *Sheeran v. Blyth Shipholding S.A.*, No. 14-548, 2015 WL 9048979, *3 (D.N.J. Dec. 16, 2015) ("Courts in this district generally agree that this type of 'group pleading' does not satisfy Rule 8, because it does not place Defendants on notice of the claims against each of them."); *D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, *5-6 (D.N.J. June 30, 2020) (dismissing claims for impermissible group pleading); *Shaw v. Housing Auth. Of Camden*, No. 11–4291, 2012 WL 3283402, *2 (D.N.J. Aug. 10, 2012) (same).

2019) (quoting *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015)).

Based upon the foregoing, the Third-Party and Counterclaim Defendants' motions are **GRANTED**, and Counts II, III, and IV of MHA's Third-Party Complaint and Counterclaim are **DISMISSED without prejudice**.[5]

### B.  9(b) Particularity – Count V

In Count V, MHA brings a claim for fraudulent inducement. Federal Rule of Civil Procedure 9(b) states, in part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Accordingly, in a fraud claim, Rule 9(b)'s heightened pleading standard "requires a plaintiff to plead the 'who, what, when, where, and how' of the conduct giving rise to the claim." *Kowalsky v. Deutsche Bank Nat'l Tr. Co.*, No. 14-07856, 2015 WL 5770523, at *8 (D.N.J. Sept. 30, 2015). "The purpose of Rule 9(b) is 'to provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior.'" *Kowalsky*, 2015 WL 5770523, at *8 (quoting *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 2000)). "Plaintiff need not always identify the particular time and place of the misrepresentation, however, so long as the complaint contains some 'alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud.'" *Peters v. Countrywide Home Loans, Inc.*, No. 15-6329, 2016 WL 2869059, at *3 (D.N.J. May 17, 2016) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985)).

---

[5] Allegations may be made upon information and belief, provided that they satisfy Federal Rule 11 and, if applicable, Federal Rule 9(b). *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (acknowledging permissibility of pleading "upon information and belief" if sufficient facts are alleged to make the allegations plausible).

Here, MHA broadly asserts a fraudulent inducement claim in Count V of the Pleading against Change, PF2, and Allscripts. However, MHA's allegations underlying the fraudulent inducement claim fail to meet the heightened pleading required under Rule 9(b). "In order to establish a claim for fraudulent inducement, five elements must be shown: '(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment.'" *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (quoting *Metex Mfg. Corp. v. Manson,* No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)). Here, MHA contends that "Change, PF2 and Allscripts permitted a misrepresentation by Change and a material omission of fact" and that "PF2 and Allscripts intentionally permitted the misrepresentation to induce MHA into entering into the Settlement Agreement and Cooperation Agreement." (ECF 23, CC/TPC ¶¶ 44-46.) However, MHA fails to identify any dates, the method by which MHA concluded that Change, PF2, or Allscripts permitted a misrepresentation, or any other relevant information pertaining to same. Instead, MHA baldly recites the elements of a fraudulent inducement claim leaving Change, PF2, and Allscripts to speculate as to the factual basis supporting a claim of fraudulent inducement against them. Indeed, as currently pled, the pleading does not contain any alternative means of injecting precision or a measure of substantiation into the allegations.

Based upon the foregoing, the Third-Party and Counterclaim Defendants' motions are **GRANTED**, and Count V of MHA's Third-Party Complaint and Counterclaim is **DISMISSED without prejudice.**

### C.  Indemnification – Count I

A claim for indemnification can arise in two ways. "First, a court may find a party is entitled to indemnification pursuant to an express contract creating such an obligation." *Poltrock v. NJ Auto. Accts. Mgmt. Co.*, No. 08=1999, 2008 WL 5416396, at *9 (D.N.J. Dec. 22, 2008). "Second, a duty to indemnify, also known as common law indemnification, arises where a party seeking indemnification can set forth a sufficient legal relationship between itself and the third-party defendant," such as an employer-employee or principal-agent relationship. *Id*.

Here, MHA asserts that it sustained damages based upon PF2's and Allscripts' approval of the Settlement Agreement and the authority that PF2 and Allscripts gave to Change to enter into the Settlement Agreement and release on PF2's behalf. (ECF 23, CC/TPC ¶¶ 26-27.) Third-Party and Counterclaim Defendants all contend that MHA's indemnification claim fails based upon MHA's failure to properly plead a claim for indemnification. (*See generally* ECF 56-1; ECF 57-1, ECF 58-1.) The Court agrees.

### i. Allscripts and PF2

MHA's first claim asserts, in part, a right to indemnification from Allscripts and PF2. (ECF 23, CC/TPC ¶¶ 21-27.) MHA alleges that it relied upon language in the release and was damaged "because of PF2's and Allscripts' approval of the Settlement Agreement and the authority that PF2 and Allscripts gave Change to enter into the Settlement Agreement and a release on PF2's behalf." (*Id*. ¶ 26.) As a threshold matter, MHA does not allege that an indemnification contract exists between MHA and Allscripts or MHA and PF2.[6]

Accordingly, MHA's only available indemnification cause of action would be through a common law claim. MHA bases the substance of this common law indemnification claim on the "black letter law" of apparent authority of a supposed principal and agent relationship. (*Id*. ¶¶ 22-

---

[6] Allscripts and PF2 were not parties to the Settlement Agreement (ECF 7-2) and even if they were, there is no indemnification provision in the Settlement Agreement.

10

23.) However, MHA's pleading raises more questions than answers as it is even unclear from the pleading or MHA's briefing whether MHA asserts PF2 and/or Allscripts is the agent or principal of Change. (*See* ECF 23; ECF 59, MHA Omnibus Opp; ECF 67, MHA Opp.) Indeed, there are no allegations in the Pleading that support or suggest that Change was authorized by Allscripts or PF2 to act on their behalf. Critically, aside from a single conclusory allegation (ECF 23, CC/TPC ¶ 23), the pleading has failed to allege anything that would support its contention that Allscripts or PF2 directly or otherwise was a party to the Settlement Agreement, that Allscripts or PF2 held Change out as its agent, or that MHA reasonably relied upon Change's alleged apparent authority.

### ii. Change

MHA's indemnity claim against Change similarly fails because MHA does not allege that Change owes it a contractual indemnity obligation (*see* ECF 23, CC/TPC ¶¶ 21-27 (failing to identify any contract containing an indemnity provision)), and (2) MHA fails to allege any relationship between itself and Change sufficient to establish a common law duty to indemnify. In opposition, MHA contends that Change is liable to MHA under a theory of "equitable indemnity" (ECF 59, MHA Omnibus Opp. at 14), which is common law indemnity by another name. *See Poltrock v. NJ Auto. Accts. Mgmt. Co.*, No. 08-1999, 2008 WL 5416396, at *9 (D.N.J. Dec. 22, 2008) (explaining that under New Jersey law, indemnification arises in only one of two ways: contractual indemnity or common law indemnity).

MHA has failed to allege that Change owes it a contractual indemnity obligation (ECF 23, CC/TPC ¶¶ 21–27), and similarly, MHA has failed to allege any relationship between itself and Change sufficient to establish a common law duty to indemnify. Instead, MHA relies on unsupported legal conclusions regarding a purported agency relationship between Change and

11

PF2. (*See id.* ¶ 23.) MHA has thus failed to allege a plausible claim for indemnification against Change.[7]

Based upon the foregoing, the Third-Party and Counterclaim Defendants' motions are **GRANTED** and Count I of MHA's Third-Party Complaint and Counterclaim is **DISMISSED without prejudice.**

## IV. CONCLUSION

For the reasons stated above, Third-Party and counterclaim Defendants' motions to dismiss are **GRANTED**. All dismissals are without prejudice. Defendants have forty-five (45) days to file an amended pleading curing the deficiencies notes herein. If Defendants do not file an amended pleading within that time, the claims dismissed without prejudice will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Leda D. Wettre, U.S.M.J.
    Parties

---

[7] The Court notes that at various points in MHA's opposition briefs, MHA attempts to amend its pleading through its briefing. This is not proper as the only proper way to amend a pleading is through the pleading itself. *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").